25-230-cv
*John Doe and Jane Roe v. Levittown Public Schools Board of Education et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of November, two thousand twenty-five.

PRESENT:    DENNY CHIN,
            EUNICE C. LEE,
            BETH ROBINSON,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOHN DOE AND JANE ROE,
parents on behalf of minor child M, JANE ROE,

            *Plaintiffs-Appellants*,

        -v-                                          25-230-cv

LEVITTOWN PUBLIC SCHOOLS BOARD OF
EDUCATION, JOHN ZAMPAGLIONE,
Principal of Jonas E. Salk Middle School,
Levittown Public Schools, in his individual and
official capacities, DANIEL AGOVINO, Dean
of Jonas E. Salk Middle School, Levittown
Public Schools, in his individual and official
capacities,

*Defendants-Appellees*,

JENNIFER MESSINA, Board President, in her official capacity, PEGGY MARENGHI, Board 1st Vice President, in her official capacity, CHRISTINA LANG, Board 2nd Vice President, in her official capacity, MARRIANE ADRIAN, Board Trustee, in her official capacity, PHYLLIS DALTON, Board Trustee in her official capacity, JAMES MORAN, Board Trustee, in his official capacity, MICHAEL PAPPAS, Board Trustee, in his official capacity, AMY O'GRADY, Assistant Principal of Jonas E. Salk Middle School, Levittown Public Schools, in her individual and official capacities,

*Defendants*.



FOR PLAINTIFFS-APPELLANTS:  BRUCE FEIN, Law Offices of Bruce Fein, Washington, D.C.

FOR DEFENDANTS-APPELLEES:  CONNOR MULRY (Adam I. Kleinberg, *on the brief*), Guercio & Guercio, LLP, Farmingdale, New York.

Appeal from the United States District Court for the Eastern District of New York (Shields, *M.J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants John Doe and Jane Roe, on behalf of their minor child, and Jane Roe individually ("Plaintiffs"), appeal from a January 28, 2025 judgment

of the United States District Court for the Eastern District of New York (Shields, *M.J.*) granting the motion of Defendants-Appellees Levittown Public Schools Board of Education, Principal of Jonas E. Salk Middle School (the "Middle School") John Zampaglione, and Dean of the Middle School Daniel Agovino (collectively, "Defendants") to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1] Plaintiffs alleged that Defendants and several other now-dismissed school officials violated federal and state law by twice suspending their sixth-grade child M from school in September 2023. On appeal, Plaintiffs argue that the district court erred in holding that they failed to state procedural due process claims under the Fourteenth Amendment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I.      Standard of Review

We review *de novo* a district court's decision to grant a 12(b)(6) motion to dismiss. *Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023). We "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1076 (2d Cir. 2021)). "To survive a motion to dismiss, a

---

[1]      On March 22, 2024, all parties consented to the Magistrate Judge's authority to hear the case.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Applicability of Due Process Clause

Plaintiffs claim that Defendants violated M's right to procedural due

process under the Fourteenth Amendment by suspending M from school on two

separate occasions, both times for allegedly calling a student a racial epithet. To

succeed on a procedural due process claim, a plaintiff must "first identify a property

right, second show that the state has deprived him or her of *that* right, and third show

that the deprivation was effected without due process." *Progressive Credit Union v. City

of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (alterations accepted) (citation modified).

Protected property interests "are normally 'not created by the Constitution'" but by "an

independent source such as state statutes or rules." *Goss v. Lopez*, 419 U.S. 565, 572

(1975) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "[I]n determining

'whether due process requirements apply in the first place, we must look not to the

weight but to the nature of the interest at stake.'" *Id.* at 575-76 (quoting *Roth*, 408 U.S. at

570-71) (citation modified). Thus, "as long as a property deprivation is not de minimis,

its gravity is irrelevant to the question [of] whether account must be taken of the Due

Process Clause." *Id.* at 576.

4

As this Court has recognized, New York's Constitution and laws create a Fourteenth Amendment-protected property interest in public education for children. *See* N.Y. Const. art. XI § 1; N.Y. Educ. Law § 3202(1); *see also Handberry v. Thompson*, 436 F.3d 52, 71 (2d Cir. 2006) ("The statutory provision . . . appear[s] to create a property interest in education protected by the Fourteenth Amendment."). Consequently, "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which . . . may not be taken away for misconduct without adherence to the minimum procedures required by [the Due Process] Clause." *Goss*, 419 U.S. at 574.

Defendants argue that, because the Middle School suspended M for periods of only three days (an in-school suspension) and five days (an out-of-school suspension), M experienced *de minimis* property deprivations to which the Due Process Clause does not extend. For the purposes of this appeal, we assume without deciding that the two suspensions constitute more than *de minimis* property deprivations and that due process protections apply.[2]

---

[2]    The Supreme Court in *Goss* explained that "the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child" and is not "de minimis." 419 U.S. at 576. The Court did not address what "a trivial period" would be. Nor has this Court answered the question. *See, e.g.*, *Farrell v. Joel*, 437 F.2d 160, 162 (2d Cir. 1971) ("This court does not seem to have ruled on the precise issue, but we will assume arguendo that due process applies when a publicly financed educational institution . . . imposes a mild, as well as a severe, penalty upon a student.") (citation modified)).

**III.     The Suspensions' Conformity with Due Process Requirements**

**1.     Requirements Under *Goss v. Lopez***

"Once it is determined that due process applies, the question remains what process is due."  *Goss*, 419 U.S. at 577 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  In *Goss*, the Supreme Court articulated the Due Process Clause's requirements for suspensions of ten days or less: "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."  *Id.* at 581.  The school must inform the student "what he is accused of doing and what the basis of the accusation is."  *Id.* at 582.

The school need not, however, provide the student with a formal hearing. *See id.* at 582; *Rosenfeld v. Ketter*, 820 F.2d 38, 40 (2d Cir. 1987).  "[T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved," such as the student's interest in avoiding an unwarranted suspension and the school's need for immediate action and efficiency. *Goss*, 419 U.S. at 579-82.  Likewise, there need not be a delay between the time the student receives notice and the time of the hearing.  *See id.* at 582 ("In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred.").

### 2. Notice

We begin with the first requirement imposed by *Goss*, "oral or written notice of the charges," *id.* at 581, and conclude that it was met.  Before either suspension went into effect, the Middle School authorities gave M and his parents notice of the charges against M.  As the complaint details, before his first suspension, Agovino told M that someone had accused him of calling another student a racial epithet.  On September 7, 2023, Zampaglione sent M's parents a letter informing them that the Middle School was placing M under a three-day in-school suspension starting September 8, 2023.  Agovino also spoke to M's mother over the phone.

Then, on September 20, 2023, Agovino told M's mother over the phone that M had called the same student the racially derogatory term again and that the Middle School was placing M under a five-day out-of-school suspension.  Agovino, Zampaglione, M, and M's mother met that day in person at the Middle School to discuss the allegations and the suspension.  M's parents received a letter, dated September 20, 2023, informing them of the second suspension starting the next day, September 21, 2023.

In both instances, then, Agovino and Zampaglione gave M and his parents proper notice of the charges, thus satisfying *Goss*'s notice requirements.

### 3. Opportunity to Be Heard

Plaintiffs also assert that M did not receive the requisite opportunity to be heard because, after M denied calling his classmate a racial epithet, Agovino did not provide M with evidence supporting the accusations. These failures, Plaintiffs say, violate *Goss*'s requirement that a student denying the charges against him must receive "an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581. This argument fails.

Prior to both of his suspensions, as the complaint makes clear, M not only received an explanation of the evidence against him but also had the opportunity to -- and did -- present his side of the story. Before his first suspension, when Agovino called in M to discuss his alleged use of a racial epithet, M "repeatedly, and firmly[,] insisted" to Agovino that "he had not used" the terms of which he was accused. App'x at 34. M also "explained to Defendant Agovino that calling [his classmate] a 'monkey' was provoked by [the classmate]'s . . . poking of M's shoulder." *Id.*

Before his second suspension, Agovino and Zampaglione met with M and his mother and told them M had again called the same student a racial epithet. M admitted that he had seen the silent video capturing the alleged exchange, but he "adamantly denied" that he had spoken to the other student, claiming that he had instead been conversing with a friend in the same hallway. *Id.* at 37. M also explained that he and his friends often called one another "monkeys." *Id.* at 37-38. M then urged

8

Agovino to speak with the friend from the hallway.  When Agovino did so, the friend commented that "M talks strangely and does make racial remarks." *Id.* at 38. Additionally, the September 20, 2023 letter advised M's parents of their right to schedule an immediate informal conference with the Principal, where they could present M's version of events and ask questions of the complaining witnesses.  The letter also provided the steps to file a written appeal of the suspension decision. Plaintiffs chose not to exercise this right.

Prior to both suspensions, therefore, school authorities offered M an explanation of the evidence against him and an opportunity to share his version of the events.  Plaintiffs argue that the suspensions nevertheless violated *Goss* because the Middle School lacked "credible evidence" of the charges.  *See* Appellants' Br. at 10.  *Goss*, however, does not require or contemplate that we inquire into the sufficiency of school authorities' evidence in carrying out suspensions of ten days or less, and we decline to do so here.[3]

### 4.  Impartiality of Decisionmakers

Plaintiffs further claim that the district court erred in dismissing their due process claims because, in violation of *Goss*'s mandate, Agovino and Zampaglione

---

[3]    *See* 419 U.S. at 583 ("Brief disciplinary suspensions are almost countless.  To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities . . . and . . . cost more than it would save in educational effectiveness.  Moreover, further formalizing the suspension process and escalating its formality and adversary nature may . . . destroy its effectiveness as part of the teaching process.").

displayed bias against M in issuing the suspensions. They claim this bias manifested when Agovino and Zampaglione "assumed the role of prosecutors," "attempted to trick M into confessing by falsely" claiming to have audio evidence, "assumed M was guilty," and "assumed M was lying and dishonest." Appellants' Br. at 8. We are not persuaded.

The complaint's factual allegations, even accepted as true, do not plausibly undermine Agovino or Zampaglione's impartiality in meting out discipline. For suspensions of ten days or less, *Goss* calls for only a "rudimentary hearing" where "the disciplinarian [himself] may informally discuss the alleged misconduct with the student." 419 U.S. at 582. Far from demanding that schools conduct elaborate hearings bifurcating the roles of investigator and decisionmaker, *Goss* itself contemplates that the "disciplinarian" -- including a "principal" -- may conduct the investigation and hearing himself. *See id.* at 582-84; *see also Brewer ex rel. Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985) ("A school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges . . . ."); *Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, 826 F.2d 526, 529 (7th Cir. 1987) ("[T]he combination of an advisory function with a hearing participant's prosecutorial or testimonial function does not create a *per se* facially unacceptable risk of bias."). That the same school officials investigated M's alleged infractions and decided on suspension as an appropriate remedy does not establish bias amounting to a procedural due process deprivation here.

10

M therefore received all the process due to him under *Goss v. Lopez*.

\* \* \*

We have considered Plaintiffs' remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk